IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAMON HALL, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-01295-N |
| | § | |
| CITY OF DALLAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant City of Dallas's motion to dismiss [8].  Because Plaintiffs Lamon Hall and Shaneaqua Miller have failed to state a claim upon which relief can be granted, the Court grants the City of Dallas's motion and grants Plaintiffs leave to amend their complaint.

### I.  ORIGINS OF THE DISPUTE

This case is about the in-custody death of Ladamonyon "DeeDee" Hall.[1]  On May 26, 2022, Dallas police officers responded to a report that Hall was causing a disturbance at a business.[2]  Pls.' Compl. ¶ 16.  When the police officers arrived, Hall appeared to be having a medical disturbance and was yelling and taking off her clothes.  *Id.* ¶ 17.  The police officers restrained her by pinning her to the ground, handcuffing her, and placing a spit hood over her head.  *Id.* ¶¶ 17–18.  During the restraint, Hall was visibly distressed

---

[1] Hall identified as a female, Pls.' Compl. ¶ 22 [1], so the Court will refer to Hall using female pronouns.
[2] The Court accepts the allegations in the complaint as true for the purposes of this Order.

and repeatedly expressed that she was in severe discomfort and having trouble breathing. *Id.* ¶ 18. Dallas Fire-Rescue paramedics arrived and transported Hall to a hospital in an ambulance. *Id.* ¶¶ 19–20. The police officers and paramedics laughed, made inappropriate comments about the weather while Hall asked for help, and referred to Hall using male pronouns. *Id.* ¶¶ 22–23. Upon arrival at the hospital, Hall was pronounced dead. *Id.* ¶ 21. According to an autopsy, Hall's cause of death was acute heart failure. *Id.* ¶ 25. The restraint position, spit hood use, and prolonged physical exertion contributed to the heart failure. *Id.* ¶¶ 25–26. Plaintiffs allege that the police officers' and paramedics' actions contributed to Hall's death. *Id.* ¶ 21.

Plaintiffs bring section 1983, wrongful death, and negligence claims against John Does. *Id.* ¶¶ 28–66. Plaintiffs state that the John Does are the paramedics and police officers who detained Hall and transported her to the hospital, but Plaintiffs do not know their specific identities. *Id.* ¶ 11. Plaintiffs also bring negligence and section 1983 claims against the City of Dallas. *Id.* ¶¶ 67–88. Moreover, Plaintiffs include the City of Dallas Police Department and Fire-Rescue Department as defendants in the case caption. The City now moves to dismiss all Plaintiffs' claims. *See generally* Def.'s Mot. [8].

## II. RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must plead "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. THE COURT GRANTS THE MOTION TO DISMISS

The City of Dallas moves to dismiss all Plaintiffs' claims against it and suggests that the Court sua sponte dismiss all claims against the John Doe defendants. The Court analyzes each of Plaintiffs' claims in turn.

#### A. Plaintiffs Do Not Have Standing to Sue in Their Individual Capacities

Plaintiffs Lamon Hall and Shaneaqua Miller bring this suit "Individually as Siblings and Independent Administrator[s] of the Estate of Ladamonyon 'DeeDee' Hall." Pls.' Compl. 1. The City argues that Plaintiffs — Hall's siblings — do not have standing to sue in their individual capacities under the Texas Wrongful Death Act ("TWDA"). Def.'s Mot. 10–11.

Standing under section 1983 "is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) (citing 42 U.S.C. § 1988(a)). As such, Plaintiffs must have standing under TWDA to bring their individual claims. *See id.* "An action to recover damages" under TWDA "is for the exclusive benefit of surviving spouse, children, and parents of the deceased." Tex. Civ. Prac. & Rem. Code Ann. § 71.004(b). Plaintiffs are Hall's siblings, so they do not have standing to bring an action arising from Hall's death in their individual capacities. *See Gallegos v. City of Three Rivers*, 2015 WL 7738078, at *3 (S.D. Tex. 2015) ("Texas courts have consistently held that siblings lack standing to bring suit under [TWDA]." (collecting cases)). Accordingly, the Court dismisses all claims Plaintiffs bring in their individual capacities.

### B. The City Department Defendants Lack the Capacity to be Sued

Next, the City argues that Plaintiffs' claims against the City of Dallas Police Department and Fire-Rescue Department should be dismissed because these departments are nonjural entities that lack the independent capacity to be sued. Def.'s Mot. 9–10. The Court agrees. "The capacity of an entity to . . . be sued 'shall be determined by the law of the state in which the district court is held.'" *See, e.g.*, *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quoting Fed. R. Civ. P. 17(b)). "Texas law permits home-rule municipalities the authority to organize police and fire departments." *Sims v. Chatham-Sims*, 2019 WL 3804960, at *4 (N.D. Tex. 2019) (citing Tex. Loc. Gov't Code Ann. §§ 341.003, 342.004(a)). Here, Dallas is a home-rule municipality, and its charter does not grant the Dallas Police Department or Dallas Fire-Rescue Department the

MEMORANDUM OPINION AND ORDER – PAGE 4

authority to be sued.  *See* Dallas, Tex., Charter ch. II, § 1(2); ch. XII–XIII.  Because the Dallas Police Department and Dallas Fire-Rescue Department lack the authority to be sued, Plaintiffs cannot sue them.  The Court accordingly dismisses all claims against these entities.

### C.  *The City of Dallas Has Not Waived Governmental Immunity from the Tort Claim*

Plaintiffs bring a state-law negligence claim against the City of Dallas.  Pls.' Compl. ¶¶ 67–79.  The City of Dallas "is generally protected from tort claim liability by governmental immunity."  *Ross v. City of Dallas*, 2023 WL 2753988, at *4 (N.D. Tex. 2023) (citing *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014)).  Such immunity "generally protects municipalities and other state subdivisions from suit unless the immunity has been waived by the constitution or state law."  *Id.* (citing *Gordon*, 434 S.W.3d at 589).  The Texas Tort Claims Act ("TTCA") provides a limited waiver of governmental immunity in certain circumstances, including for injuries arising from (1) "the operation or use of a motor-driven vehicle or motor-driven equipment," (2) a "use of tangible personal or real property," or (3) premise defects.  TEX. CIV. PRAC. & REM. CODE §§ 101.021–.022.  However, the TTCA waiver of immunity "does not apply to claims arising out of an intentional tort."  *Goodman v. Harris County*, 571 F.3d 388, 394 (5th Cir. 2009) (citing TEX. CIV. PRAC. & REM. CODE § 101.057(2)).

Plaintiffs argue that the City has waived governmental immunity because their negligence claim arises out of the city employees' negligent use of tangible personal property, including the use of physical restraints and medical equipment.  Pls.' Resp. 11.

First, Plaintiffs assert that their negligence claim arises from the police officers' use of physical restraints — handcuffs and a spit hood — which constitutes the use of tangible personal property. *Id.* Plaintiffs cite *City of Watauga v. Gordon* to support this proposition. 434 S.W.3d at 586. In that case, Gordon sued the municipality for injuries allegedly caused by police officers' negligent use of handcuffs. *Id.* at 588. The Supreme Court of Texas determined that claims "of excessive force in the context of a lawful arrest arise out of a battery rather than negligence, whether the excessive force was intended or not." *Id.* at 593 (collecting cases). Then, because TTCA does not waive immunity for claims arising out of intentional torts, such as battery, the Supreme Court of Texas held that Gordon had not stated a claim for which governmental immunity had been waived. *Id.* at 594. Here, like in *Gordon*, Plaintiffs' claim arising out of excessive force in using handcuffs and a spit hood in the context of a lawful arrest constitutes battery rather than negligence. Accordingly, the City of Dallas has not waived immunity to the tort claim based on the use of handcuffs and a spit hood.

Second, Plaintiffs argue that the paramedics' negligence in providing medical care to Hall constitutes a use of tangible personal property because "medical care involves physical interaction between medical personnel and the patient, and often involves the use of medical equipment and supplies." Pls.' Resp. 11. However, the Supreme Court of Texas rejected this argument in *Texas Department of Criminal Justice v. Miller*, 51 S.W.3d 583 (Tex. 2001). The Supreme Court of Texas explained that there is not a waiver of immunity "in every case in which medical treatment is provided by a public facility." *Id.* at 588 (quoting *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996)). That "some

property is merely involved is not enough. Using that property must have actually caused the injury." *Id.* (citations omitted). Here, Plaintiffs do not allege that the paramedics' use of medical equipment caused Hall's injuries and death. Therefore, the City of Dallas has not waived its immunity to Plaintiffs' negligence claim on this basis.

The Court thus concludes that Plaintiffs' negligence claim does not fall within the limited waiver of governmental immunity embodied in TTCA and thus dismisses the negligence claim against the City.

### D.  Plaintiffs Do Not Plausibly Allege a Monell Claim Against the City

Under 42 U.S.C. § 1983, every "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected," any person to the deprivation of any federally protected rights, privileges, or immunities, shall be civilly liable to the injured party. "Municipalities can be held liable for violating a person's constitutional rights under § 1983." *Est. of Bonilla v. Orange County*, 982 F.3d 298, 308 (5th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). However, a municipality cannot be held liable solely on a respondeat-superior theory. *Monell*, 436 U.S. at 691. To state a claim for municipal liability under *Monell*, a plaintiff must plead facts that plausibly establish three elements: (1) a policymaker; (2) an official custom or policy; and (3) a violation of constitutional rights whose moving force is the custom or policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

There are three ways to establish a municipality's official policy under *Monell*: (1) "written policy statements, ordinances, or regulations," (2) "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal

policy," and (3) "a single decision . . . when the official or entity possessing final policymaking authority for an action performed the specific act that forms the basis of the § 1983 claim." *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023) (citing *Webb v. Town of St. Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019)).

Here, Plaintiffs list several interrelated *de facto* policies that they assert contributed to Hall's death. *See* Pls.' Compl. ¶¶ 81–88. However, Plaintiffs acknowledge that they did not plead facts that plausibly establish that these alleged practices are so common and well-settled as to constitute customs fairly representing municipal policy: "While Plaintiffs acknowledge that the current Complaint does not explicitly detail specific prior incidents, they possess evidence suggesting a pattern of abuses that goes beyond a single incident. Plaintiffs intend to amend their Complaint to include specific examples of prior incidents . . . that point to a widespread practice of constitutional violations." Pls.' Resp. 16. Accordingly, the Court dismisses the *Monell* claim and grants Plaintiffs leave to amend their pleadings.

### E.  *Plaintiffs Do Not Plausibly Allege a Failure-to-Train Claim Against the City*

Next, the Court addresses Plaintiffs' failure-to-train claim. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To state a failure-to-train claim, a plaintiff must plead that (1) "the training procedures of the municipality's policymaker were inadequate," (2) "the policymaker was deliberately indifferent in adopting the training policy," and (3) "the inadequate training policy directly caused the plaintiff's injury." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 535 (S.D. Tex. 2020) (citing *Conner v. Travis*

*County*, 209 F.3d 794, 796 (5th Cir. 2000)); *see also Benfer v. City of Baytown*, 120 F.4th 1272, 1286–87 (5th Cir. 2024).  Regarding the first element, the focus is on the "adequacy of the training program in relation to the tasks the particular officer must perform," and "the plaintiff must allege with specificity how the training program is defective in this regard." *Taylor*, 448 F. Supp. 3d at 535 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) and *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).

Here, Plaintiffs allege that the city employees "are not properly trained in how to take, screen, identify, refer and/or handle detainees with mental health issues."  Pls.' Compl. ¶ 84.  As with their other *Monell* claim, Plaintiffs "acknowledge that their current Complaint does not provide extensive detail regarding specific deficiencies in the City's training, supervision, or policies" and "intend to amend their Complaint to include such details." Pls.' Resp. 21.  Accordingly, the Court dismisses the failure-to-train claim against the City and grants Plaintiffs leave to amend their pleadings.

### F. The Claims Against the Police Officers and Paramedics are Time Barred

Lastly, Plaintiffs bring section 1983, state-law wrongful death, and state-law negligence claims against unidentified police officers and paramedics.  Pls.' Compl. ¶¶ 28–66.  The City argues that these claims are barred by the statute of limitations.  Def.'s Mot. 20.

"Rule 12(b)(6) dismissal under a statute of limitation is proper only when the complaint makes plain that the claim is time-barred and raises no basis for tolling." *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253 (5th Cir. 2021).  "The limitations period for a § 1983 action is determined by the state's personal injury

limitations period." *Whitt v. Stephens County*, 529 F.3d 278, 282 (5th Cir. 2008) (citing *Jacobsen v. Osborne,* 133 F.3d 315, 319 (5th Cir. 1998)). Texas has a two-year limitations period for personal injury claims. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.003). A section 1983 claim accrues when "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Gantrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993).

The City of Dallas argues, and Plaintiffs do not dispute, that Plaintiffs' claims against the city employees accrued on May 26, 2022, the day Hall was detained. Def.'s Mot. 20. Plaintiffs filed their complaint on May 28, 2024, more than two years after that.

Plaintiffs argue that the relation back doctrine applies to their case so that their claims against the unidentified city employees are not time barred. Pls.' Resp. 23. "An amendment to a pleading relates back to the date of the original pleading when," among other things, "the amendment changes . . . the naming of the party against whom a claim is asserted," and "the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C). Here, however, the original complaint was filed after the statute of limitations had already run for the claims against the city employees, so relating these claims back to the date Plaintiffs filed their complaint would not save these claims from being time barred. Moreover, an amendment to substitute an individual for a John Doe defendant does not relate back to the date of the original complaint because such an amendment is not necessitated by the mistake or misidentification at which Rule 15(c) is aimed. *Balle v. Nueces County*, 952 F.3d 552, 557

MEMORANDUM OPINION AND ORDER – PAGE 10

(5th Cir. 2017). Accordingly, the relation back doctrine does not protect Plaintiffs' claims against the unidentified city employees from being time barred.

Plaintiffs also seek the benefit of equitable tolling to preserve their claims against the city employees. Pls.' Resp. 23. "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson,* 211 F.3d 927, 930 (5th Cir. 2000). Application of equitable tolling is a question of fact that turns on the circumstances of a particular case. *See Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) ("As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules, but we draw on general principles to guide when equitable tolling is appropriate."). Here, Plaintiffs state they "have been unable to identify the specific employees involved due to the City's lack of cooperation." Pls.' Resp. 24. The Court disagrees; Plaintiffs' inability to determine the identities of the John Does — such as through a discovery motion — before the limitations period had run is due to their own decision to file the suit after the limitations period. *See Balle*, 952 F.3d at 558 (finding tolling unnecessary when plaintiff filed original complaint a few days before limitations period had run and could not timely determine the identities of the Jane Does). Accordingly, the Court declines to apply the equitable tolling doctrine to Plaintiffs' claims against the city employees. The Court thus sua sponte dismisses these claims.

## CONCLUSION

For the foregoing reasons, the Court grants the City's motion and dismisses all Plaintiffs' claims. Then, the Court grants Plaintiffs leave to amend their complaint within

MEMORANDUM OPINION AND ORDER – PAGE 11

thirty (30) days of this Order.  If Plaintiffs do not amend their complaint within thirty days,

the Court will dismiss all the claims with prejudice without further notice.

Signed May 19, 2025.

David C. Godbey

Chief United States District Judge